[Crim. No. 12882.   Second Dist., Div. One.   Aug. 10, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM J. FORD, Defendant and Appellant.

Gilbert F. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Gordon Ringer, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—The inception of the within proceedings was by way of information filed in San Luis Obispo County charging defendant with seven felonies committed in June 1961 (burglary [count I]; possessing a concealable weapon [count II]; robbery [count III]; kidnaping [count IV]; assault with a deadly weapon [count V]; kidnaping [count VI]; and murder of a deputy sheriff [count VII].) The cause was tried to a jury and defendant was convicted on all seven counts;

the burglary, robbery and murder, each was found to be in the first degree. On count VII the jury fixed the penalty at death. The Supreme Court affirmed the judgment on counts I through VI, modifying count I to show a conviction of burglary in the second instead of the first degree, and ordering rearraignment and resentence on the first six counts; and reversed the judgment as to count VII remanding the cause for a new trial (*People* v. *Ford*, 60 Cal.2d 772, 801-802 [36 Cal. Rptr. 620, 388 P.2d 892]).

The retrial of defendant for murder on count VII was to a jury; again defendant was found guilty of murder first degree and the penalty was fixed at death. The Supreme Court modified the judgment imposing the death penalty by reducing the degree of the crime to murder of the second degree, and affirmed the judgment as modified. The cause was remanded to the trial court ''with directions to arraign and pronounce judgment on defendant on the homicide count in accordance with the rules stated in this opinion.'' (*People* v. *Ford*, 65 Cal.2d 41, 59 [52 Cal.Rptr. 228, 416 P.2d 132].) The judgment imposing sentence on the other six counts was affirmed.

Pursuant to the remittitur issued by the Supreme Court and in the morning of June 15, 1966, defendant was arraigned for judgment in the trial court; he requested that counsel be appointed to represent him. The court appointed the public defender and continued further arraignment and pronouncement of judgment to 2 p.m. on the same day. At the request of the public defender pronouncement of judgment was continued to September 28, 1966. On September 28, 1966, the court heard defendant's declaration for disqualifiation of the trial judge and ruled that the declaration was not timely filed. Thereafter again defendant was arraigned. He then moved to have the matter referred to the probation department for a pre-sentence investigation report; the motion was denied. The trial judge asked defendant if he had any legal cause to show why judgment should not be pronounced against him; defendant having stated ''None.'' the judge, reciting ''that, by reason of the commission of the offense of murder as charged against the defendant in the Information, and of which he has been found guilty in the second degree,'' sentenced defendant to the state prison for the term prescribed by law, the sentence to run concurrently with any and all prior uncompleted sentences theretofore imposed. Defendant appeals from the judgment.

The first issue raised by appellant is that he was not arraigned in accordance with the directions of the Supreme Court and remittitur issued thereon which, he claims, are "that the trial court give [him] the opportunity to enter a plea and instruct him of his right to counsel." He argues that the trial court did not follow section 988, Penal Code, in that "[h]e was not asked whether he entered a plea of guilty or not guilty to the modified judgment of the Supreme Court," and in accord with section 987, Penal Code, was not informed by the court that he had the right to have counsel before being arraigned.

█ At the outset, it should be noted that there is nothing in the Supreme Court's opinion (65 Cal.2d 41) requiring the trial court to ask defendant how he pleads to the charge of second degree murder. Contrary to appellant's claim, it reveals that the Supreme Court modified the *judgment, affirmed* the *judgment* as modified and remanded the cause with directions "to arraign and pronounce judgment" (*People* v. *Ford,* 65 Cal.2d 41, 59 [52 Cal.Rptr. 228, 416 P.2d 132]); inasmuch as there was no untried second degree murder charge, no retrial was ordered and the mandate to arraign was not for plea but for judgment. Thus, section 988, Penal Code, providing for arraignment of an accused for the purpose of plea prior to trial, was not applicable; and it was neither necessary nor proper for the trial judge to ask defendant how he "pleaded" to the "modified judgment of the Supreme Court" as urged by appellant. We know of no provision for a plea to a judgment. █ Controlling here is section 1200, Penal Code, governing arraignment for judgment. With section 1200 the trial court fully complied by advising defendant of the nature of the charge against him and of his plea, the verdict and the modified judgment of the Supreme Court. The trial court in fact arraigned him for judgment twice—on September 15, 1966, before counsel was appointed to represent defendant, and again on September 28, 1966, in the presence of his counsel after which defendant was asked whether he had any legal cause why judgment should not be pronounced against him.

█ While there is no merit to appellant's claim that error was committed because he was not informed by the court in accord with section 987, Penal Code, that he had a right to have counsel before being arraigned, because section 987 relates to arraignment for plea not judgment, the record shows that upon defendant's request the trial judge appointed the

public defender to represent him several weeks prior to the time he was finally arraigned and judgment was pronounced under section 1200, Penal Code.

Appellant's last claim of error is that the trial judge abused his discretion in refusing to refer the matter to the probation officer for investigation in accord with section 1203, Penal Code.. He characterizes this as ''an unusual case'' and calls our attention to various portions of the opinion of the Supreme Court (*People* v. *Ford,* 65 Cal.2d 41 [52 Cal.Rptr. 228, 416 P.2d 132]) wherein certain incidents in defendant's history are related and his physical and mental condition at the time of the homicide discussed, which condition according to appellant ''would ameliorate and mitigate the gravity of his offense.'' He argues that such a report by the probation officer ''could prove useful, both to the trial court in imposing sentence, and to the Adult Authority in giving further consideration to possible parole.''

It was because of ''the uncontradicted evidence of defendant's mental disability at the time he committed the homicide'' (65 Cal.2d 41, 59) that the Supreme Court reduced the degree of the crime of murder; and it was just such ''mitigation'' that caused the Supreme Court to modify the judgment.

█ It can hardly be argued that defendant was eligible for probation or that a probation report could have proved useful to the judge in imposing sentence. Section 1203, Penal Code (as amended in 1965), provides in part: ''Except as hereafter provided in this section, probation shall not be granted to any person who shall have been convicted of . . . murder .. . . kidnaping . . . and who at the time of the perpetration of said crime . . . or at the time of his arrest was himself armed with a. deadly weapon (unless at the time he had a lawful right to carry the same), . . .'' We fail to see how defendant could have gained any advantage from a probation report for no matter what the probation officer might have found and recommended the fact remains that defendant shot down a deputy sheriff on the highway in broad daylight while the deputy was attempting to take from him a stolen revolver which he was carrying in his belt; thus, defendant had been found guilty of murder committed with the stolen gun which, as an ex-convict, he had no right to carry. (*People* v. *Ford,* 60 Cal.2d 772, 783-784 [36 Cal.Rptr. 620, 388 P.2d 892].) Under the circumstances, prima facie he was ineligible for probation. (*People* v. *Orrante,* 201 Cal.App.2d 553, 559-

566 [20 Cal.Rptr. 480].) Further, the trial judge was required under the mandate of the Supreme Court to impose sentence for second degree murder (*People* v. *Ford*, 65 Cal.2d 41, 59 [52 Cal.Rptr. 228, 416 P.2d 132]); the sentence for second degree murder is fixed by statute as from five years to life (§ 190, Pen. Code). Nor do we see how such a report would add significantly to the information gathered by the Department of Corrections during defendant's long incarceration. This information, of course, would be available to the Adult Authority in giving consideration to the matter of parole and, as pointed out by the Attorney General, defendant has been in continuous custody since June 9, 1961, the date he murdered the deputy sheriff, most of which time was spent in the state prison primarily in death row during the pendency of prior appeals. As to the usefulness of a pre-sentence report to the Adult Authority in giving further information to possible parole, the trial judge still was not obliged to order a probation report. The final paragraph of section 1203 provides: "In those cases in which the defendant is not eligible for probation, the judge may in his discretion refer the matter to the probation officer for an investigation of the facts relevant to sentence. The probation officer must thereupon make an investigation of the circumstances surrounding the crime and the prior record and history of the defendant and make a written report to the court of the facts found upon such investigation." Under the circumstances of this case we find no abuse of the trial court's discretion in refusing to refer the matter to the probation department for a pre-sentence report.

Section 1203, Penal Code, contains the further new provision, "In unusual cases, otherwise subject to the preceding paragraph, in which the interests of justice would best be served thereby, the court may, with the concurrence of the district attorney, grant probation." Under this portion of section 1203, discretion in the matter of granting probation is vested in the trial judge only upon "the concurrence of the district attorney." Not only does no concurrence of the prosecutor here exist but the district attorney was strongly opposed to probation for defendant and vehemently said so on two occasions. The first time, on September 15, 1966, the district attorney told the court "And we do not concur that probation should be granted." The second time on September 28, 1966, the district attorney told the trial judge, "We certainly do not feel that this is the type of case in which we would ever concur in the defendant being placed on proba-

tion.'' In addition the trial judge, having heard the lengthy trial of the cause and all of the evidence, expressed his feelings that ''no probation could or would be granted'' and, with his knowledge of the facts of the case, stated that he ''would under no circumstances whatsoever even consider the probability of granting probation'' and that ''to secure a probation officer's report would be merely an idle act.''

The judge, having presided over defendant's second trial, was familiar with the evidence in the case, of defendant's guilt on six other separate offenses and the details of the killing of the deputy sheriff engaged in the performance of his duty. The district attorney had the right to withhold his consent to the grant of probation to defendant under section 1203, Penal Code; and the trial judge was justified under the circumstances in refusing to consider the matter or order a report from the probation department.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied September 8, 1967.